UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JUAN ANTONIO PIZANO,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL,<br><br>Defendant. | Case No.17-cv-03030-HRL<br><br>**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 21, 28 |

## I. INTRODUCTION

Plaintiff Juan Antonio Pizano Zavala ("Pizano") appeals a final decision by Defendant Nancy A. Berryhill, Acting Commissioner of the Social Security Administration ("the Commissioner"), to deny Pizano's application for disability benefits under the Social Security Act. Each party now moves for summary judgment. Dkt. Nos. 21, 28. The Court takes both motions under submission without oral argument, Civil L.R. 7-1(b), and for the reasons described below grants each motion in part and denies each in part.

All parties consented to have this matter adjudicated by a magistrate judge. Dkt. Nos. 9, 11.

## II. BACKGROUND

### A. Medical History

Born in Mexico in 1972, Pizano attended school through the sixth grade before coming to the United States. AR 53. He gained permanent resident status, AR 197-98, and for twenty years picked grapes nine hours a day, six days a week. AR 54, 217-18. One week's labor earned him $350. AR 217-18. Pizano is the father of two young girls, who live with him and his longtime

partner, Monica. AR 52-53, 71-72.

Pizano has a history of problems with his head, spine, shoulders and neck. He injured his head in 2002 during an altercation with police. As Pizano explained it, he was at a house with other people "when suddenly the police came and they started beating another guy[.]" AR 70. Pizano tried to intervene but an officer pushed him and he fell on the left side of his head. Pizano cannot remember anything else about the incident. *Id.* An October 2013 MRI revealed "extensive posttraumatic encephalomalacia of the left frontal lobe and left temporal lobe and to a lesser extent left parietal lobe." AR 339-40.

Pizano also experienced degenerative changes in his spine, but the condition remained largely stable between 2013 and 2015. An April 2013 MRI revealed "posterior disc bulge at L5-S1 with an annular tear in the right foraminal region which may touch the right S1 nerve. Minor posterior disc bulge at L4-5. Left paracentral disc bulge at T11-12 without stenosis." AR 349. In March 2014, an MRI showed "mild multilevel discogenic degenerative changes," but "[n]o significant interval change from prior comparison examination of [April 2013]." AR 399. The following year, an MRI was "similar to prior comparison examination of March 2014." AR 487.

As for his shoulders, an April 2013 MRI of the right shoulder revealed "[a]cromioclavicular joint arthritis. Minimial subacromial subdeltoid bursitis. Mild infraspinatus strain or tendinitis without evidence of frankrotator cuff tear . . . ." AR 351. A year later, an MRI of the left shoulder was generally normal, with "minimal strain and/or tendinitis." AR 396-97.

Finally, a February 2014 neck MRI showed "[m]ild multilevel degenerative changes most pronounced at C6-7 where diffuse disc bulging and a left posterior paracentral disc protrusion are seen. These degenerative changes result in advanced left neural foraminal encroachment." AR 400-01.

Pizano is "mildly obese," with a 2014 body mass index of 30.1. AR 95.

Multiple physicians offered opinions about Pizano's ailments, but three are most relevant to the parties' motions. Borina Dramov, MD, Pizano's treating neurologist, described Pizano's prognosis as "guarded" in July 2015. AR 587-88. Dr. Dramov looked to the October 2013 MRI, which she said indicated that Pizano would have difficulty with memory, learning, and keeping a

2

job. *Id.* She said that Pizano was unable to stand or sit for more than an hour at a time and that he was "incapable of even low stress work. *Id.* Dr. Dramov offered similarly pessimistic opinions of Pizano's ability to work in February 2014, AR 292, 590, and September 2015, AR 639-41.

Another treating physician, Raymond Gaeta, MD, was also skeptical about Pizano's ability to work. Dr. Gaeta said Pizano could not sit or stand for more than thirty minutes at a time and that he would miss more than four days of work per month because of his impairments. AR 600-04. Dr. Gaeta said Pizano should not lift anything – even less than ten pounds – in a competitive work environment. AR 602.

Third and finally, in October 2014 a non-examining state agency physician, J. Bonner, MD, reviewed the record and concluded that Pizano could lift 20 pounds occasionally, 10 pounds frequently, and could stand, walk, and sit for about six out of eight hours in a normal workday. AR 97.

### B. Procedural History

Pizano applied in 2014 for benefits under Title II of the Social Security Act, alleging that his disability began on July 15, 2013.[1] AR 195-96. After the Commissioner denied Pizano's application initially and on reconsideration, Pizano requested a hearing before an administrative law judge ("ALJ"). ALJ Betty Roberts Barbeito presided over a hearing in San Jose in 2015. AR 45-80.

Three witnesses testified at the hearing. Pizano testified through an interpreter, describing his education, work history, and his various ailments. AR 51-56, 65-72. He said he speaks no English and that when he worked in the fields, he communicated exclusively in Spanish. AR 52-53, 67. Second, Arthur Robenger, MD, a medical expert, described his review of Pizano's medical records. He said Pizano had no limitations for sitting, could stand and walk for six out of eight hours in a workday (three hours each), and that he could lift ten pounds frequently, twenty pounds occasionally. AR 63. Dr. Robenger acknowledged that his opinion did not take into account Pizano's "concussions with cerebral contusion" because it was outside his area of

---

[1] Pizano says that he also applied for benefits under Title XVI, Dkt. No. 21 at 3, but the administrative record reflects only an application for Title II benefits. *See, e.g..*, AR 30, 89, 263.

expertise. AR 64.

Finally, Thomas Linville, a vocational expert, testified about Pizano's work experience. Linville explained that a hypothetical claimant with Pizano's limitations would be unable to perform Pizano's past work as a grape picker. AR 74-75. Linville then suggested three representative jobs that a person in Pizano's condition perform, all based on the Dictionary of Occupational Titles ("DOT"): "small products assembler," "cleaner/polisher," and "inspector/hand packager." AR 76-77. Linville added that for all three of these positions, "it certainly does happen that people in our community and in Monterey County work primarily capability – primarily capability to speak in Spanish. So it reduces the overall number, but they're present." AR 76. For each position, Linville explained that there were a certain number of jobs available nationally, a smaller number in the State of California, and then an even smaller subset of California jobs where "a person could work speaking primarily Spanish." AR 76-77.

The ALJ issued a written decision in December 2015. After concluding that Pizano met the insured status requirements for Title II benefits, the ALJ considered the disability claim with the five-step, sequential evaluation approach that is required by the Commissioner's regulations. At step one, the ALJ found that Pizano had not performed substantial gainful activity since the alleged onset date of his disability. AR 32. At step two, the ALJ found that Pizano had multiple severe impairments: "degenerative disc disease of the cervical spine; degenerative disc disease of the lumbar spine; arthritis of the right shoulder; minimal strain and/or mild tendinitis of the left shoulder; and posttraumatic cystic encephalomalacia of the left frontal and temporal lobe[.]" AR 32. At step three, the ALJ determined that none of Pizano's impairments or combinations thereof met or were medically equivalent to the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

At step four, the ALJ found that Pizano had a residual functional capacity ("RFC") to perform "light work as defined on a function-by-function basis in 20 CFR 404.1567(b), except he is limited to sitting 6 hours and standing/walking 6 hours, in an 8-hour workday. He can never climb ladders, ropes or scaffold, can frequently climb stairs, balance, crouch and crawl, and can occasionally stoop. He must avoid unprotected heights, and reaching is limited to overhead

bilaterally." AR 33. Given Pizano's RFC, the ALJ concluded that he could not perform his past relevant work picking grapes. AR 37.

As part of her step-four analysis, the ALJ adopted the RFC proposed by non-examining state agency physician Dr. Bonner and discounted the opinions of Drs. Gaeta and Dramov. AR 36-37. The ALJ also discounted Pizano's own subjective complaints about his symptoms. AR 33-34.

At step five, the ALJ concluded that despite his limitations, Pizano could still engage in substantial gainful employment, including the jobs proposed by the vocational expert at the hearing. AR 36. The ALJ therefore concluded that Pizano was not disabled and she denied his claim.

The Appeals Council later denied Pizano's request for review of the ALJ's decision, so Pizano filed a civil action in this Court.

## III.   LEGAL STANDARD

### A.   Standard of Review

This Court has jurisdiction to review the Commissioner's decision to deny benefits but must affirm if the Commissioner's decision applied the correct legal standards and is supported by substantial evidence. 42 U.S.C. § 405(g) ("findings of the Commissioner ... as to any fact, if supported by substantial evidence, shall be conclusive"); *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and is "more than a mere scintilla, but may be less than a preponderance." *Molina*, 674 F.3d. at 1110-11 (citations omitted). A court must consider the record as a whole when assessing whether the Commissioner's decision is supported by substantial evidence. *Howard v. Heckler*, 782 F.2d 1484, 1487 (9th Cir. 1986). "If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted).

### B. Standard for Determining Disability

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Additionally, the impairment must be so severe that a claimant is unable to do previous work, and cannot "engage in any other kind of substantial gainful work which exists in the national economy," considering the claimant's age, education, and work experience. *Id.* § 423(d)(2)(A).

In determining whether a claimant has a disability, an ALJ follows a five-step analysis:

1. At step one, the ALJ determines whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled. If not, the analysis proceeds to step two.

2. At step two, the ALJ must assess whether the claimant suffers from a severe "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* § 404.1520(a)(4)(ii). If not, the claimant is not disabled. If so, the evaluation proceeds to step three.

3. At step three, the ALJ determines whether the claimant's impairments or combination of impairments meets or medically equals the requirements of the Listing of Impairments. *Id.* § 404.1520(a)(4)(iii). If so, the claimant is disabled. If not, the analysis proceeds to step four.

4. At step four, the ALJ determines whether the claimant has the RFC to perform past work despite his or her limitations. *Id.* § 404.1520(a)(4)(iv). If the claimant can still perform past work, then he or she is not disabled. If not, then the evaluation proceeds to step five.

5. At the fifth and final step, the ALJ must determine whether the claimant can perform other substantial gainful work available in the economy, considering the claimant's RFC, age, education, and work experience. *Id.* § 404.1520(a)(4)(v). If so, the claimant is not disabled.

The claimant bears the burden of proof at steps one through four; the Commissioner has the

1  burden at step five. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001).

## IV. DISCUSSION

Pizano says the ALJ's decision should be reversed for two reasons. First, the ALJ erred in discounting the opinions of Drs. Dramov and Gaeta. Second, the ALJ failed to account for Pizano's inability to speak English as part of the step five analysis.

### A. Step-Four Analysis

Pizano argues it was legal error for the ALJ to discount the opinions of Drs. Dramov and Gaeta. "The ALJ gave less weight to those opinions because they were not supported by the objective findings," but "Pizano maintains that these opinions are supported by the objective findings of record." Dkt. No. 21 at 5. If Pizano's point is that there was sufficient objective evidence for the ALJ to credit the two opinions, that argument has little merit. It is up to the ALJ to resolve conflicts in the record, and this Court must affirm so long as the ALJ's conclusion was supported by substantial evidence. Even if "the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." *See Edlund*, 253 F.3d at 1156 (9th Cir. 2001). The relevant question for this Court is whether the ALJ articulated specific and legitimate reasons" to discount the two opinions. Pizano says she did not, without any elaboration.[2]

When a treating physician's opinion is well-supported and not inconsistent with other substantial evidence in the record, a treating physician's opinion is entitled to controlling weight. *Edlund*, 253 F.3d at 1157; 20 C.F.R. § 404.1527(c)(2). Even if the treating doctor's opinion is contradicted by other evidence, an ALJ may discount it only for "specific and legitimate reasons that are supported by substantial evidence in the record." *Edlund*, 253 F.3d at 1157. For example, an ALJ may discount a medical opinion if it is based primarily on a claimant's subjective complaints, *see Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004), or if the opinion is inconsistent with the record as a whole, 20 C.F.R. § 404.1527(c)(2)(4).

As part of her step four analysis, the ALJ noted multiple reasons to discount the opinions

---

[2] The Court agrees with the Commissioner that Pizano waived any challenge to the ALJ's findings about whether to credit Pizano's own statements about his symptoms. Dkt. No. 28 at 6.

of Drs. Dramov and Gatea, including that they were inconsistent with "multiple MRIs showing only mild findings" and that they "relied heavily on the claimant's subjective complaints." AR 37. The Court agrees with the Commissioner that these were specific and legitimate reasons, backed by substantial evidence, to discount the two physicians' opinions. Notably, Pizano does not contest the ALJ's finding as to his credibility, so the ALJ was justified in discounting the opinions because they relied on Pizano's own reports. More importantly, the ALJ correctly observed that some of the objective findings, specifically the MRIs, suggested that Pizano's ailments were mild and stable. In light of the deferential standard of review, the Court sees no error here.

### B. Step-Five Analysis

Pizano and the Commissioner also disagree about whether the ALJ properly accounted for Pizano's inability to speak English at step five of the analysis. On this second question, the Court agrees with Pizano.

As noted above, at step five of the sequential analysis the burden shifts to the Commissioner to prove that the claimant can engage in substantial gainful activity that exists in significant numbers in the national economy. *Bustamante*, 262 F.3d at 953-54. One way for the Commissioner to meet that burden is to call on a vocational expert to testify to "(1) what jobs the claimant, given his or her residual functional capacity, would be able to do; and (2) the availability of such jobs in the national economy." *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999). In such cases, the ALJ "poses hypothetical questions to the vocational expert that set out all of the claimant's impairments for the vocational expert's consideration." *Id.* (citations and internal quotation marks omitted). The vocational expert then "translates [these] factual scenarios into realistic job market probabilities by testifying on the record to what kinds of jobs the claimant still can perform and whether there is a sufficient number of those jobs available in the claimant's region or in several other regions of the economy to support a finding of not disabled." *Id.* (citations and internal quotation marks omitted).

The Commissioner "rel[ies] primarily" on the Dictionary of Occupational Titles, and "[o]ccupational evidence provided by a [vocational expert] generally should be consistent with the

occupational information supplied by the DOT." SSR 00-4P.[3] When a vocational expert "provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between" the testimony and the DOT. *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (*quoting* SSR 00-4P). If there is a conflict between the vocational expert's testimony about the requirements of a particular job and the job requirements as presented in the DOT, the ALJ must "obtain a reasonable explanation for any apparent conflict." *Id.* at 1153 (*citing* SSR 00-4P).

The first question here is whether the vocational expert's testimony conflicted with the DOT. Pizano said it did because the vocational expert suggested that Pizano could perform three jobs – all pulled from the DOT – that require at least basic English abilities, and Pizano does not speak any English at all. Dkt. No. 21 at 7-10. The Commissioner disagrees, arguing that the DOT lays out only "the maximum requirements of occupations as generally performed, not the range of requirements." Dkt. No. 28 at 7 (*quoting* SSR 00-4P). According to the Commissioner, if the Court concludes that the DOT presumes some English ability, then every non-English speaker will be per se disabled at step five of the sequential analysis. *Id.*

The DOT classifies different jobs as requiring different "Language Development" scores ranging from "Level 1," the lowest, to "Level 6," the highest. *Linares v. Colvin*, No. CV 14-3524 JC, 2014 WL 5528404, at *4 (C.D. Cal. Oct. 31, 2014). The Ninth Circuit has said that "the most persuasive reading" of the DOT is that it assumes all jobs require some English, *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001), and multiple district courts have concluded that a claimant who speaks no English cannot satisfy even a Level 1 language requirement. *See Linares v. Colvin*, No. CV 14-3524 JC, 2014 WL 5528404, at *5 (C.D. Cal. Oct. 31, 2014) (collecting cases); *but see Meza v. Astrue*, No. C-09-1402-EDL, 2011 WL 11499, at *21 (N.D. Cal. Jan. 4, 2011) (claimant's inability to speak English not inconsistent with Level 1 jobs). In other words, these courts say that if a vocational expert testifies that a job does not require any English, that

---

[3] Although Social Security Rulings do not carry "the force of law," they are nonetheless binding on ALJs. *Bray v. Commissioner of Social Security Administration*, 554 F.3d 1219, 1224 (9th Cir. 2009) (citation omitted); 20 C.F.R. § 402.35(b)(1).

9

testimony conflicts with the DOT.

This Court agrees that if a claimant speaks no English, that claimant cannot meet the requirements of even a Level 1 job as described in the DOT. Speaking English is one of the "maximum requirements of occupations as generally performed." SSR 00-4P. There might be jobs that require less, but they are not described in the DOT. That does not mean that every non-English speaker is per se disabled. It means only that when a vocational expert testifies that a non-English speaker can perform a Level 1 job, that testimony conflicts with the DOT. Resolving that conflict can be straightforward, as the vocational expert's own testimony can provide a reasonable explanation for the discrepancy. *See* SSR 00-4P ("A [vocational expert] may be able to provide more specific information about jobs or occupations than the DOT."). Still, the conflict has to be acknowledged and then resolved on the record.

That means that in this case the vocational expert's testimony conflicted with the DOT. The ALJ found that Pizano speaks no English, AR 38, but then relied on the vocational expert to conclude that Pizano could perform jobs that require at least Level 1 English skills, AR 38. That is a requirement Pizano cannot meet. Instead of acknowledging the conflict, however, the ALJ's written decision states, "Pursuant to SSR 00-04p, I have determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles." AR 38.

Because the written decision did not acknowledge any conflict, the ALJ necessarily did not resolve it. This was legal error, so the question for this Court then becomes whether the error was harmless. *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless if it is "inconsequential to the ultimate nondisability determination." *Id.* (citations omitted).

The Commissioner argues that the vocational expert's testimony did enough to resolve any conflict because he first proposed representative jobs for Pizano and then stated how many such jobs were locally available for people who "primarily" speak Spanish. Dkt. No. 28 at 7-8. In other words, the vocational expert acknowledged a potential conflict with the DOT but resolved it by reference to real-world information about jobs for Spanish-speakers. Yet here Pizano objects that he does not "primarily" speak Spanish, he speaks it exclusively, and he says this further

10

undermines the ALJ's step-five analysis. Dkt. No. 21 at 7-9.

If the vocational expert had testified about jobs for Spanish-only speakers, then the Court might have been persuaded to find harmless error concerning the unresolved DOT-vocational expert conflict. The inverse is also true: it might have been harmless error if the vocational expert's testimony remained the same but the ALJ's written decision acknowledged and resolved the conflict between the DOT and the vocational expert's testimony. Both problems together, however, create too much uncertainty in the record for the Court to be confident that any error was harmless. The Court therefore must reverse the Commissioner's decision and order that the case be remanded so the ALJ can perform the appropriate inquiries under SSR 00-4P.

## V. CONCLUSION

For the reasons explained above, the Court grants Pizano's motion as to the ALJ's step-five analysis but denies it as to the step-four analysis. The Commissioner's motion is granted as to the step-four analysis but denied as to step five. The Court therefore reverses the Commissioner's decision as it relates to the step five analysis and remands the case under sentence four of 42 U.S.C. § 405(g) for proceedings consistent with this order. Judgment will be entered accordingly.

**IT IS SO ORDERED.**

Dated: May 31, 2018

HOWARD R. LLOYD
United States Magistrate Judge